FILED
01 MAR 29 PM 3:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ENTERED
MAR 29 2001

| | |
|---|---|
| MORGAN KEEGAN & COMPANY, INC.; WADE SCHUESSLER; DAVID HOWARD; TOM HAYES; PETE KLYCE, ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | CIVIL ACTION NO. 00-G-2442-S |
| COMMUNITY BANCSHARES, INC., ) ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

This cause is before the court upon the motion of Morgan Keegan & Company, Inc. ("Morgan Keegan"), Wade Schuessler ("Schuessler"), David Howard ("Howard"), Tom Hayes ("Hayes") and Peter Klyce ("Klyce") (hereinafter collectively referred to as the "Morgan Keegan Parties") to strike the jury demand filed by defendant Community Bancshares, Inc. ("Community"). The motion is based upon a clause in an engagement letter agreement dated August 23, 1999, (hereinafter "Agreement") entered into between Morgan Keegan and Community. The Agreement contains the following clause:

> This agreement may not be amended or modified except in writing signed by each of the parties hereto and shall be governed by and construed in accordance with the laws of the State of Tennessee. <u>Each of the parties hereto expressly waives all right to trial by jury in any action or proceeding arising out of this Agreement.</u>



The question of whether a party is entitled to a jury trial is governed by federal and not state law. K.M.C. Co., Inc. v. Irving Trust Co., 757 F.2d 752 (6th Cir. 1985). It is clear that under federal law parties to a contract may by prior written agreement waive their right to a jury trial. Id. at 755. The prevailing standard applied by the federal courts to determine the validity of a contractual waiver is whether the party against whom the waiver is asserted knowingly and voluntarily waived its right to a jury trial. Id. at 756. In the instant case, Community does not question the validity of the jury waiver, but only its scope. See Defendant's Response to Plaintiff's motion to strike Jury Demand ¶ 3 ("The scope of the jury waiver provision set forth above is limited to Count One of Community's counterclaim . . . .") Therefore, the only question remaining is the scope of the waiver.

In Paracor Finance, Inc. v. General Elec. Capital Corp., the court found contractual jury waiver provisions to be analogous to arbitration clauses as each relates to the enforcement by nonsignatories. 96 F.3d 1151,1165-66 (9th Cir. 1996). In Paracor the court applied the rules relating to arbitration clauses to a jury waiver provision and determined that the nonsignatories could not rely on either the choice of law clause or the jury waiver provision contained in the contract at issue. Although this circuit has not decided whether the rules for determining the scope of an arbitration clause also apply to contractual jury waiver provisions, the court is persuaded that the Ninth Circuit approach is correct. Therefore, this court will look to Eleventh Circuit arbitration cases for

guidance in determining the scope of the jury waiver provision in the instant case as to both signatories and nonsignatories.

In <u>Gregory v. Electro-Mechanical Corp.</u>, 83 F.3d 382, (11th Cir. 1996), the court was called upon to determine the meaning of the words "arising hereunder" in an arbitration clause.[1] The issue on appeal, as stated by the court was as follows:

> Does that language only require the arbitration of breach of contract claims . . . or does it require the arbitration of other disputes that originate out of or have a connection with that underlying agreement.

<u>Id.</u> at 383. The plaintiffs in <u>Gregory</u> argued that of the seven counts in the complaint, six were for causes of action other than breach of contract and were not within the scope of the arbitration agreement. The court noted that "[w]hether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." <u>Id.</u> at 384. The <u>Gregory</u> court examined the complaint and concluded that every claim arose under the contract. The following illustrates the methodology employed by the court:

> Although couched in various terms and theories of action, every claim in this complaint targets the fact that the plaintiffs did not receive the amount of money that they thought they should have for their stock and that the defendant buyer caused that loss.
>
> The structure of the complaint and the allegations of fact reflect that these claims all arose under the agreement. There are seven counts, and every count incorporates all of the facts alleged in the count denominated as a

---

[1] In arbitration cases, the Eleventh Circuit Court of Appeals "has not drawn a distinction between the words 'arising under' and 'arising out of.'" <u>Id.</u> at 386.

> breach of contract claim. Thus, the complaint itself says that the facts constituting defaults under the contract are a critical part of the so-called tort claims. If the buyer had fully complied with the contract, as interpreted by the plaintiffs, there would be not tort claims.
>
> .... It is apparent from reading these claims that the alleged misrepresentations relate to what the EMC would do under the purchase contract. The omissions counts allege largely that EMC failed to disclose that it did not intend to comply with the contract. All of these claims depend upon EMC's failure to fulfill its perceived obligations in connection with the sale of stock.

Id. at 384-85.

Applying the Gregory analysis to the present case, it is clear that all of the counts in Community's counterclaim,[2] as amended, arise out of the Agreement. Count one alleges that Morgan Keegan breached the terms of the Agreement, which contains the jury waiver. Therefore, it clearly arises out of the agreement. As noted above, Community concedes that count one is subject to the jury waiver provision of the Agreement.

Counts two and three collectively aver that Morgan Keegan, Hayes, Schuessler and Howard are liable for fraud based upon the representations enumerated in paragraphs one through nine. Paragraphs four through six contain the factual allegations supporting Community's fraud counts. Paragraph four alleges among other things that

---

[2] Although Community denominates its pleading as "Counterclaim And Third-party Complaint," it in fact is a counterclaim against non-parties pursuant to Rule 13(h). Community does not allege that the added parties are liable to Community "for all or part of the plaintiff's claim against [Community]," as is required for third-party complaints under Rule 14. Accordingly, the court will enter an order aligning the parties correctly.

4

Morgan Keegan through its agents (the individual counter-defendants) made representations about its ability to find purchasers for the securities that were the subject of the Agreement, about the then existing market conditions for those securities, and that it had the ability and experience to sell such securities. Paragraph five alleges that Community executed the Agreement based upon those representations. Paragraph six alleges that after execution of the Agreement, Morgan Keegan continued to make assurances that it would be able to place the securities. It is clear to the court that each of the fraud claims in counts two and three arise out of the Agreement. The alleged fraud goes directly to Morgan Keegan's ability to place the securities that were the subject of the Agreement. If Community had not entered into the Agreement with Morgan Keegan, the alleged misrepresentations would not be actionable. Without the Agreement, Morgan Keegan's alleged misrepresentations about its ability to place the securities would not be actionable. Clearly, counts two and three depend upon the existence of the Agreement and the jury waiver contained therein should apply to the claims asserted in those counts.

Count four avers That Morgan Keegan at some point after August 23, 1999, determined not to expend its best efforts in the placement of the securities that were the subject of the Agreement and/or determined that the market conditions for the placement of the securities had changed. The count avers that such conduct by Morgan Keegan constituted a suppression of material fact. This count clearly has its foundation in

the Agreement. Morgan Keegan's obligation to attempt to place the securities arises as a result of it being a placement agent for Community with respect to those securities. This agency was created by the Agreement. Therefore, a count based upon Morgan Keegan's alleged failure to reveal that it would not expend its best efforts in the placement of the securities also arises out of the Agreement.

Count five avers that Morgan Keegan and Klyce, while acting in the line and scope of his employment, failed to meet the reasonable standard of care of investment brokers and bankers for the private placement of such securities and that Community was damaged as a result of this negligent and wanton misconduct. The relationship of broker and/or banker arose out of the Agreement. This count, therefore, also arises out of the Agreement.

Count six avers that Morgan Keegan and all four individual counter-defendants breached a fiduciary relationship created by the Agreement. This count explicitly avers that the fiduciary relationship was created by the Agreement. Therefore, it too arises out of the Agreement.

Based upon the reasoning of <u>Gregory</u>, all of Community's claims arise out of the Agreement. Therefore, the jury waiver provision of that agreement covers all claims by Community against Morgan Keegan.

Community has also asserted claims against individuals who are nonsignatories to the Agreement. Based upon the reasoning of <u>Paracor, supra</u>, the court

will again look to arbitration cases in this circuit for guidance as to when a nonsignatory will be bound by a contractual jury waiver provision. In <u>MS Dealer v. Franklin</u>, 177 F.3d 942 (11th Cir. 1999), the court enumerated the types of cases in which arbitration agreements may be invoked by a nonsignatory:

> "Although arbitration is a contractual right that is generally predicated on an express decision to waive the right to trial in a judicial forum, this court has held that the lack of a written arbitration agreement is not an impediment to arbitration." <u>Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.</u>, 10 F.3d 753, 756-57 (11th Cir.1993). This is because "there are certain limited exceptions, such as equitable estoppel, that allow nonsignatories to a contract to compel arbitration." <u>Id.</u> at 757. A second exception exists when, "under agency or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." <u>Boyd v. Homes of Legend, Inc.</u>, 981 F. Supp. 1423, 1432 (M.D. Ala.1997) (citing cases from Fourth and Sixth Circuits in support of proposition). A third "exception arises when the parties to a contract together agree, upon formation of their agreement, to confer certain benefits thereunder upon a third party, affording that third party rights of action against them under the contract." <u>Id.</u> at 1429.
>
> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. <u>Sunkist Soft Drinks</u>, 10 F.3d at 757. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[ ] out of and relate[ ] directly to the [written] agreement," and arbitration is appropriate. <u>Id.</u> at 758. Second, "application of equitable estoppel is warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." <u>Boyd</u>, 981 F. Supp. at 1433. Otherwise, "the arbitration proceedings

> [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." Sam Reisfeld & Son Import Co. v. S.A. Eteco, 530 F.2d 679, 681 (5th Cir.1976).

177 F.3d at 947 (alterations in original).

Applying these rules to the instant case it is clear that the nonsignatories may invoke the jury waiver provision. Both of the circumstances giving rise to equitable estoppel exist here. Each of Community's fraud claims against the individual defendants makes reference to or presumes the existence of the Agreement as does its negligence and breach of fiduciary duty claims. Community's claims also clearly raise allegations of substantially interdependent and concerted misconduct by both the nonsignatories and the signatory, Morgan Keegan. The second type of exception based upon agency principles also applies. The counts against the individual defendants, with the exception of count six, all allege that the wrongful conduct of the individuals was undertaken within the line and scope of their employment by Morgan Keegan. Clearly Community is seeking to hold Morgan Keegan liable for the actions of the individuals based upon respondeat superior. To allow Community to have a jury trial on its claims against the individuals would, under such circumstances, effectively deny Morgan Keegan the benefit of the jury waiver provision. It is clear that unless the nonsignatories are allowed to invoke the jury waiver, the benefit of that waiver to Morgan Keegan will be eviscerated.

## CONCLUSION

The rules for determining the scope of an arbitration clause apply by analogy to contractual jury waiver provisions. Applying those rules, each of the claims asserted by Community arise out of the Agreement and are subject to the jury waiver provision of that agreement as to Morgan Keegan, a signatory. Based upon both equitable estoppel and agency principles, the individual defendants, although nonsignatories may invoke the contractual jury waiver provision against Community. Accordingly, counter-defendants' motion to strike jury demand is due to be granted. An appropriate order will be entered contemporaneously herewith.

DONE this 29th day of March 2001.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.